# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

**SHERRY CLERE,**

        **Plaintiff,**

v.                                             **Case No.: 3:10-cv-00795**

**GC SERVICES, L.P.,**

        **Defendant.**

## ORDER

Pending before the Court is Plaintiff's Motion to Compel Defendant GC Services, L.P., to respond to the outstanding discovery requests contained in Plaintiff's First Request for Production of Documents and Plaintiff's Notice of Taking Deposition ("30(b)(6)" Notice). (Docket No. 29).[1] Defendant filed a Response in Opposition and Plaintiff replied. (Docket Nos. 38 and 45). The parties, by counsel, presented oral arguments to the Court, at the conclusion of which the Court permitted the parties an additional seven days in which to provide supplemental briefing. The parties filed supplemental briefs outlining their respective positions on the remaining issues. (Docket Nos. 47 and 48). Therefore, this matter is fully briefed and ripe for disposition.

**I.**     **Factual Background**

On June 7, 2010, Plaintiff instituted the instant civil action alleging that her employer, Defendant GC Services, fired her in retaliation for her participation as a plaintiff in a Fair Labor Standards Act (hereinafter "FLSA") action seeking damages

---

[1] Plaintiff also requests the Court to order Defendant to pay all costs and attorney's fees associated with Plaintiff's Motion to Compel. (Docket No. 29).

from Defendant for alleged wage and hour violations.[2] Plaintiff states that twelve days after *Meyers* was filed, her car and the cars of three other *Meyers* plaintiffs were vandalized in the GC Services parking lot.[3] Plaintiff also states that she received a note under her keyboard which read "U N your buddies Don't know whats coming U think the keying was bad just wait." According to Plaintiff, she immediately notified GC Services management of the vandalism of her car and stated that she had pictures of the damage which they could obtain from her attorney. Defendant conducted a seven-day investigation and ultimately fired Plaintiff, stating that she was dishonest by making false statements during the investigation and insubordinate by refusing to assist with the investigation. Plaintiff worked for Defendant GC Services from December 17, 2007 until December 2, 2009.

## II. Relevant Law

### A. Discovery

The Federal Rules provide that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed.R.Civ.P. 26(b)(1). The Rules further give courts the authority to "order discovery of any matter relevant to the subject matter involved … Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All

---

[2] Plaintiff was one of nine original plaintiffs in *Meyers, et al. v. GC Services, L.P.*, Civil Case No. 3:09-01242, filed in this Court, which was subsequently consolidated with *Beasley, et al. v. GC Services, L.P.*, Civil Case No. 4:09-01748-CDP, in the United States District Court for the Eastern District of Missouri.

[3] The factual background is cited from Plaintiff's Complaint, Plaintiff's Motion to Compel, and Plaintiff's Reply to Defendant's Response in Opposition to Plaintiff's Motion to Compel. (Docket Nos. 1, 29, 45).

discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii)." *Id.* It is well-established that the "discovery rules are to be accorded a broad and liberal treatment." *Hickman v. Taylor,* 329 U.S. 495, 507 (1947). However, the discovery sought must be relevant. Fed.R.Civ.P. 26(b)(1); *see also Herbert v. Lando,* 441 U.S. 153, 177 (1979) (stating that "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied").

A court must strike a balance between the broad scope of the rules of discovery and the discovery of relevant evidence that is ultimately deemed admissible or inadmissible at trial. The test for relevancy under the discovery rules is necessarily broader than the test for relevancy under Rule 402 of the Federal Rules of Evidence. Fed.R.Civ.P. 26(b)(1) ("relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). In striking the appropriate balance between these two tensions, "[d]istrict courts enjoy nearly unfettered discretion to control the timing and scope of discovery and impose sanctions for failures to comply with its discovery orders." *Hinkle v. City of Clarksburg,* 81 F.3d 416, 426 (4th Cir. 1996) (citations omitted). The party resisting discovery bears the burden of showing why it should not be granted. *Rogers v. Tri–State Materials Corp.,* 51 F.R.D. 234, 247 (N.D.W.Va.1970); *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010).

### B. <u>FLSA Retaliation</u>

The retaliation provision of the FLSA is a central component of the Act's complaint-based enforcement mechanism. "To secure [employer] compliance with the substantive provisions of the FLSA, Congress 'chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been

3

denied.'" *Ball v. Memphis Bar-B-Q Co.,* 228 F.3d 360, 363 (4th Cir. 2000), quoting *Mitchell v. Robert De Mario Jewelry, Inc.,* 361 U.S. 288, 292 (1960). The retaliation provision renders it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). The provision therefore effectuates enforcement of the Act's substantive provisions by removing "fear of economic retaliation" so that employees need not "quietly ... accept substandard conditions." *Mitchell,* 361 U.S. at 292.

"A plaintiff asserting a prima facie claim of retaliation under the FLSA must show that (1) she engaged in an activity protected by the FLSA; (2) she suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action. *Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008), citing *Wolf v. Coca-Cola Co.,* 200 F.3d 1337, 1342-43 (11th Cir. 2000); *Conner v. Schnuck Mkts., Inc.,* 121 F.3d 1390, 1394 (10th Cir.1997). If the plaintiff establishes a *prima facie* claim of retaliation, the burden shifts to the defendant to provide a legitimate non-discriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Conner v. Schnuck Mkts., Inc.,* 121 F.3d 1390, 1394 (10th Cir.1997) (applying the *McDonnell Douglas* burden-shifting framework to an FLSA retaliation claim); *Whitten v. City of Easley*, 62 Fed.Appx. 477, 480 (4th Cir. 2003). If the defendant does so, the burden then shifts back to the plaintiff, who must prove that the employer's stated reason is merely pretextual. *McDonnell Douglas,* 411 U.S. at 804. Because employers rarely leave direct evidence of their retaliatory intent, plaintiffs often make their cases by using circumstantial evidence to undercut the credibility of the

4

explanations given by their employers. Circumstantial evidence can be identified and collected in various different ways.

## III. Parties' Contentions

The discovery issues raised in Plaintiff's Motion to Compel have been narrowed to the following four issues.[4]

### A. Documents Regarding the Nine Original *Meyers* Plaintiffs

Plaintiff seeks documents reflecting the treatment, communication with or exchanges with the nine original plaintiffs in the *Meyers* action. (Docket No. 48 at 2-3). Plaintiff contends that the defendant targeted the nine original *Meyers* plaintiffs for harassment and termination due to their participation in the FLSA lawsuit. (*Id.* at 3). Consequently, she asserts that this request is calculated to lead to information reflecting a retaliatory intent, motive, and pattern of practice targeting all nine individuals. (*Id.*).

Defendant argues that the other eight *Meyers* plaintiffs are not proper comparators and that discovery of documents regarding interactions with them is not likely to lead to the discovery of admissible evidence. (Docket No. 47 at 2). Defendant contends that plaintiff is entitled only to proper comparator evidence, that is, documents and information concerning "similarly situated" employees who reported to the same supervisor and engaged in the same conduct as Plaintiff. (*Id.* At 3). Defendant argues that this request is a "fishing expedition" designed to frustrate and burden Defendant. (*Id.*).

### B. Documents Reflecting Claims of Retaliatory Treatment

Plaintiff also seeks documents and testimony reflecting any claims of retaliatory treatment for <u>any</u> protected activity at either of Defendant's Huntington locations

---

[4] The Court refers to Plaintiff's supplemental brief as relating the remaining discovery issues.

5

(identified as "Huntington East" and "Huntington West") over the past five years. (Docket No. 48 at 5). Plaintiff states that this request is calculated to establish that Defendant engaged in a pattern or practice of retaliating against employees who asserted their rights for protected activity. (*Id.*).

Defendant argues that allegations of non-FLSA retaliation are "wholly irrelevant to Plaintiff's claim" and that "allegations of retaliation against employees who engaged in other forms of protected activity do not demonstrate that GC Services retaliated against Plaintiff for participating in a FLSA lawsuit." (Docket No. 47 at 4).

### C. <u>Documents Reflecting Incidents of Vandalism</u>

Plaintiff's third remaining request seeks documents and testimony reflecting any incidents of vandalism on Huntington GC Services premises during the last five years. (Docket No. 48 at 5-6). Plaintiff intends to show that Defendant's stated reason for firing her, that she hindered the investigation of vandalism of her car, was a pretext. (*Id.*). Therefore, she states that she seeks to discover how Defendant responded to other incidents of vandalism, arguing that if her claim of vandalism was handled differently, it suggests disparate treatment and retaliatory intent. (*Id.* At 6).

Defendant argues that this request exceeds the scope of proper comparator evidence and, if anything, Plaintiff is only entitled to information related to incidents at Huntington West, her employment location, which comprised the same factual scenario as Plaintiff's. (Docket No. 47 at 5-6). In other words, Plaintiff is entitled to incidents where an employee claimed that his or her personal property was vandalized, argued that the perpetrator was another employee, provided a list of suspected perpetrators, and made misrepresentations and failed to comply with directives during the investigation. (Docket No. 6).

### D. Documents Concerning Disciplinary Practices

Finally, Plaintiff seeks documents and testimony concerning Defendant's disciplinary practices at both Huntington East and Huntington West. (Docket No. 48 at 6). Plaintiff states that Defendant refuses to provide any information relating to the Huntington East facility, but that information from both locations is relevant because they were managed by the same human resources director, Helen Arigan. (*Id.*).

Defendant objects, arguing that Plaintiff is only entitled to proper comparator evidence, which it defines as information relating to employees who reported to Plaintiff's supervisor and engaged in the same conduct for which she was allegedly terminated. (Docket No. 47 at 7). Defendant confirms that it has produced all documents pertaining to employees at the Huntington West location who were disciplined or terminated for insubordination or dishonesty. (*Id.*). It asserts that contrary to prior representations made by Plaintiff, Plaintiff worked at the Huntington West facility for her entire period of employment and never worked at the Huntington East facility. (*Id.*). Defendant states that the facilities have different supervisors and handle different projects. (*Id.*). Defendant contends that Helen Arigan's responsibilities relate to benefits, payroll, and other personnel-related tasks and that although she recommended Plaintiff's termination, she did not make the decision to terminate her. (*Id.* at 8).

### IV. Analysis

As Defendant has made clear in its oral and written arguments presented to the Court, its objections are premised on the principle of comparator evidence. Defendant argues that Plaintiff's discovery requests seek information that is outside the scope of proper comparator evidence of "similarly situated individuals" and, thus, is not relevant

7

to Plaintiff's claims. However, Defendant's undue fixation on comparator evidence fails to appreciate the objective of plaintiff's discovery requests. Plaintiff does not seek documents regarding the nine original *Meyers* plaintiffs, claims of retaliatory treatment, incidents of vandalism, and disciplinary practices as comparator evidence. Rather, plaintiff seeks this information to establish nefarious intent, motive, and a pattern or practice of retaliatory animus. As Plaintiff aptly states, she "is not restricted to comparator evidence to prove her case." (Docket No. 48 at 3).

In *Warren v. Halstead Industries, Inc.*, 802 F.2d 746 (4th Cir. 1986), a group of African American employees sued their employer alleging that they were discharged in retaliation for filing administrative charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and for complaining to management about racial discrimination in promotions. On the issue of pretext, the Court stated that "evidence of a general atmosphere of discrimination may be considered with other evidence bearing on motive in deciding whether a plaintiff has met his burden of showing that the defendant's articulated reasons are pretextual." *Warren*, 802 F.2d at 753 (4th Cir. 1986). Also, "[s]tatistics with regard to the defendant's employment policy and practice may be helpful to a determination whether its action in a particular case conformed to a general pattern of discrimination." *Id.*, citing *McDonell Douglas,* 411 U.S. at 805, 93 S.Ct. at 1825. Statistical proof "may be a tell-tale sign of pretext even if it is not dispositive of the claim in and of itself." *Id.*, citing *Davis v. Richmond, Fredericksburg & Potomac RR,* 593 F.Supp. 271, 280 (E.D.Va. 1984). "Although statistics cannot alone prove the existence of a pattern or practice of discrimination, or even establish a prima facie case shifting to the employer the burden of rebutting the inference raised by the figures," they serve "and will continue to serve an important role

8

in cases in which the existence of discrimination is disputed." *Id.*, citing *Teamsters v. United States,* 431 U.S. 324, 339 (1977).

Similarly, in *Ford v. Community Cash Stores, Inc.*, 14 F.3d 594, 1994 WL 14843 (4th Cir.1994), the Fourth Circuit affirmed the sufficiency of the evidence to support a jury's verdict awarding compensatory and liquidated damages to a former employee whom the jury found was fired in violation of the Age Discrimination in Employment Act of 1967 (ADEA). Among the evidence which supported her claim was data refelcting that within a 12-day period, four long-time employees; ages 61, 42, 56, and 63; were fired or left their employment under circumstances suggesting that their resignations were coerced and that one month prior, a fifth employee, age 52, also left employment.[5] *Ford*, 1994 WL 14843 at * 2.

A synthesis of the foregoing cases and applicable case law establishes that at a minimum, the information which Plaintiff seeks in her remaining discovery requests could lead to the discovery of evidence that is probative of pretext. Pretext can be demonstrated by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could rationally find them unworthy of credence and [with or without the additional evidence and inferences properly drawn therefrom] infer that the employer did not act for the asserted non-discriminatory reasons." *Dennis v. Osram Sylvania, Inc.* , 549 F.3d 851, 857 (1st Cir. 2008). Defendant argues that it terminated Plaintiff for her dishonesty and insubordination in the investigation of the vandalism of her car.

---

[5] The other evidence which the plaintiff presented included her personnel files showing positive ratings and deposition testimony of the employer's personnel director stating that the plaintiff was fired because she "no longer fit into [their] plans" which were "[p]lans for future growth, plans for being a viable employee." *Ford*, 1994 WL 14843 at * 2.

9

Plaintiff is entitled to discover evidence to rebut this statement.

First, documentation demonstrating the nature, substance, and tenor of Defendant's interactions with the *Meyers* plaintiffs could lead to admissible evidence to establish pretext. If Plaintiff does, in fact, discover evidence that many or all of the *Meyers* plaintiffs were disciplined or fired shortly after filing the FLSA lawsuit, such evidence is certainly probative of a retaliatory pattern or practice. Defendant states that the employees involved in the *Meyers* litigation left GC Services employ for "wholly non-retaliatory reasons," including leaving voluntarily or for offenses such as drinking on the job. (Docket No. 47 at 4). However, the Court finds that this explanation is insufficient. Defendant's perception of what constitutes a "non-retaliatory" reason to leave employment is entirely subjective and does not persuade the Court that Plaintiff's request masks a "fishing expedition" to frustrate and burden Defendant. Plaintiff is entitled to documents which are responsive to this request.

Defendant also objects that Plaintiff's request for documents relating to the nine original *Meyers* plaintiffs is "overly broad and unduly burdensome." Defendant states that it "is a large company and locating individual emails [which are responsive to this request] is an arduous and time-consuming task," which is complicated "by the enormous breadth" of "Plaintiff's request for *all* communications, regardless of date, topic, etc." (Docket No. 38 at 4-5; *see also* Docket No. 47 at 4, Fn. 5). Plaintiff asks for Defendant's communications regarding the treatment, communication with, or exchanges with nine employees. Defendant fails to set forth sufficient facts to establish that Plaintiff's request is "overly broad and unduly burdensome." In determining whether a request is overly broad, the Court will balance the burden on the objecting party against the benefit to the discovering party of having the information. *Hoffman v.*

10

*United Telecomms., Inc.,* 117 F.R.D. 436, 438 (D.Kan. 1987). The objecting party has the burden to show why the discovery is improper. *Id.* Any objections that discovery is unduly burdensome or overly broad must contain a factual basis for the claim (*i.e.,* time it would take to collect the evidence requested or exorbitant costs of retrieving the information requested). *See Daneshvar v. Graphic Technology, Inc.,* No. 97-2304, 1998 WL 726091, at *1 (D.Kan. Oct.9, 1998).

Second, documents reflecting claims of retaliatory treatment are probative of pretext pursuant to the same rationale. If Plaintiff is able to show through statistical evidence that a significant number of employees were disciplined or discharged within a short period of time after asserting their rights under a protected activity, it would aid in establishing a pattern of retaliatory animus. Defendant argues that instances in which employees complained of retaliation unrelated to the FLSA are irrelevant to Plaintiff's claim. To the contrary, Plaintiff suggests that the statute under which the employees asserted their rights is inconsequential. She theorizes that Defendant enforced a retaliatory animus against employees who lodged complaints, regardless of whether they asserted their rights in a FLSA action or another protected activity. This Court finds that Plaintiff's request could lead to the discovery of admissible evidence. "Because employers rarely leave a paper trail—or 'smoking gun'—attesting to a discriminatory intent, disparate treatment plaintiffs often must build their cases from pieces of circumstantial evidence which cumulatively undercut the credibility of the various explanations offered by the employer." *Springs v. Mayer Brown, LLP*, 2011 WL 2004229, *2 (W.D.N.C. 2011).

Third, documents reflecting any incidents of vandalism on Huntington GC Services premises for the past five years could lead to admissible evidence that

Defendant's stated reason for discharging Plaintiff is pretexual. Defendant argues that if anything, Plaintiff is entitled only to information regarding incidents which comprised the same factual scenario as Plaintiff's complaint of vandalism in order for it to be admissible as proper comparator evidence. However, Plaintiff does not indicate that she seeks this information as comparator evidence and, therefore, this Court does not sustain the narrow scope of discovery that Defendant suggests. Defendant's stated reason for firing Plaintiff involved her conduct in relation to the investigation of the vandalism of her car. Therefore, the facts and circumstances of how Defendant handled other incidents of vandalism are clearly relevant to compare and contrast with the investigation of Plaintiff's vehicle for the purpose of establishing pretext. If, for instance, other incidents were investigated differently or were not investigated at all, it may support Plaintiff's claim that Defendant was "looking for a reason to fire her."

Finally, information and testimony relating to Defendant's disciplinary practices at both Huntington facilities in which Helen Arigan participated, consulted, or made a recommendation for discipline or termination is reasonably calculated to lead to admissible evidence.[6] Plaintiff argues that information from the Huntington East facility is discoverable because it was managed by the same human resource director, Helen Arigan, as the Huntington West facility where Plaintiff worked. Defendant maintains that the Huntington East facility has different supervisors and different projects and is thus entirely irrelevant to Plaintiff's claims, as Plaintiff never worked at the Huntington East location. Defendant's minimization of Helen Arigan's involvement in disciplinary measures, including the termination of Plaintiff, and its attempts to distinguish the

---

[6] Noting both parties' arguments, the Court finds that it is appropriate to narrow the scope of the request as outlined.

Huntington East office as a unit which is completely autonomous from the Huntington West location fails to convince the Court that information relating to disciplinary practice at Huntington East is entirely irrelevant to Plaintiff's claims. Deposition testimony indicates that from 2001 through 2006, Helen Arigan was a Human Resources Manager at GC Services' only Huntington office, "Huntington East." (Docket No. 48-1). In 2006, GC Services opened a second location, "Huntington West," and Arigan became Human Resources Director of both facilities. (*Id.*). Arigan testified that the HR department reviews all disciplinary notices and performance issues before they are placed in employees' personnel files. (*Id.*). She also testified to her substantial involvement in the investigation of Plaintiff's complaint of vandalism, her evaluation of the situation, and her recommendation for Plaintiff's termination. (*Id.*). Although Mark Schordock, the Senior Vice-President of the first-party division of GC Services, the division in which Arigan works, made the decision to fire Plaintiff, Arigan was the one to call Plaintiff at home on speaker phone notifying her that she was being fired and the reasons for her discharge. (*Id.*). Accordingly, Ms. Arigan's practices are relevant to the issues in dispute in this case.

## V. Conclusion

For the foregoing reasons, Plaintiff's Motion to Compel (Docket No. 29) is **GRANTED** as outlined below.[7] Defendant is **ORDERED** to provide the following information **on or before June 13, 2011**:

1. Documents reflecting the treatment, communication with or exchanges with the nine original plaintiffs in the *Meyers* action.

---

[7] In response to Plaintiff's request for attorney's fees and costs, the Court finds that it appropriate to address that matter separately and will issue a separate Order.

2. Documents and testimony reflecting any claims of retaliatory treatment for any protected activity at either of Defendant's Huntington locations over the past five years.

3. Documents and testimony reflecting any incidents of vandalism on Huntington GC Services premises for the last five years.

4. Documents and testimony concerning Defendant's disciplinary practices at both of Defendant's Huntington facilities in which Helen Arigan participated, consulted, or made a recommendation for discipline or termination over the past five years.

If Defendant is unable to provide the information within ten (10) days, as ordered, Defendant shall file a Motion to extend the compliance deadline specifically setting forth the difficulties preventing a timely production. Responsive documents that can be produced within the stated time frame should not be withheld simply because additional time is needed to complete a portion of the production.

The Clerk is instructed to provide a copy of this Order to all counsel of record.

**ENTERED:** June 3, 2011.

Cheryl A. Eifert
United States Magistrate Judge